IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EUGENE LEWANDOWSKI          :

                               :

       v.                     :    Civil Action No. DKC 16-3421
                                    Criminal No. DKC 14-0082

                               :

UNITED STATES OF AMERICA

                               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are the motion to vacate sentence filed by Petitioner Eugene Lewandowski ("Petitioner") (ECF No. 43) and the government's motion to seal its response in opposition (ECF No. 48). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to vacate sentence will be denied and the motion to seal will be denied in part.

## I. Background

On July 15, 2014, pursuant to a plea agreement, Petitioner pled guilty to the charges of sexual exploitation of a minor for the purpose of child pornography ("Count 1") and transportation of child pornography ("Count 5"). Petitioner was sentenced to 360 months on Count 1 and a concurrent term of 240 months on Count 5. Petitioner appealed to the United States Court of Appeals for the Fourth Circuit, which dismissed the appeal on

July 16, 2015, because Petitioner "knowingly and voluntarily waived his right to appeal and . . . the issues [Petitioner sought] to raise on appeal f[e]ll squarely within the compass of his waiver of appellate rights." (ECF No. 39). Petitioner did not file a petition for writ of certiorari with the Supreme Court of the United States. Accordingly, Petitioner's convictions became final on October 14, 2015. *See United States v. Sosa*, 364 F.3d 507, 509 (4th Cir. 2004) (stating that because the petitioner did not file a petition for writ of certiorari in the Supreme Court, his conviction became "final" for the purpose of § 2255's one year statute of limitations ninety days after the court dismissed his direct appeal (citing *Clay v. United States*, 537 U.S. 522, 525 (2003) (holding that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction")).

On October 12, 2016, Petitioner filed the pending motion to vacate sentence pursuant to 28 U.S.C. § 2255. (ECF No. 43).[1] The government was directed to respond and did so on January 12, 2017. (ECF No. 49). The government also filed a motion to seal its response. (ECF No. 48).

---

[1] Petitioner also submitted a copy of the results of his Static-99 psychosexual evaluation, an evaluation used to assess a sex offender's risk of reoffending, performed on August 19, 2016. (*See* ECF No. 43-1).

## II. Government's Motion to Seal

### A.   Standard of Review

A motion to seal must comply with Local Rule 105.11 (D.Md. 2016), which provides that "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections."   This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).   Before sealing any documents, the court must provide the non-moving party with notice of the request to seal and an opportunity to object.   *Id.* at 234.   This notice requirement may be satisfied by docketing the motion "reasonably in advance of deciding the issue."   *Id.* at 235. Finally, the court should consider less drastic alternatives to sealing, such as filing redacted versions of the documents.   If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives.   *Id.*

**B.    Analysis**

The government filed a motion to seal its response in opposition to Petitioner's motion to vacate sentence. (ECF No. 48). The government states that because it cites to its sentencing memorandum which was filed under seal and 18 U.S.C. § 3509(d)(2) provides that it must file any papers that disclose the name or other information concerning a child under seal, the response in opposition should remain under seal. The government does not explain why redactions or other less restrictive alternatives to sealing would not protect the sensitive information, as required by Local Rule 105.11. Additionally, § 3509(d)(2) provides that any person who files a paper that discloses the name of or any information concerning a child must "submit to the clerk of the court – (A) the complete paper to be kept under seal; *and (B) the paper with the portions of it that disclose the name of or other information concerning a child redacted, to be placed in the public record*." (emphasis added). Accordingly, the government will be ordered to redact appropriate information from its response and file the redacted document within fourteen days. The original document will remain under seal.

## III. Motion to Vacate Sentence

### A.    Standard of Review

To be eligible for relief under § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the § 2255 motion, along with the files and records of the case, conclusively shows that Petitioner is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. § 2255(b). If Petitioner makes this showing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*.

### B.    Ineffective Assistance of Counsel

Petitioner argues that his defense counsel was ineffective at sentencing because counsel failed to (1) defend against the government's argument that Petitioner poses a significant risk for recidivism and (2) object to various "unconstitutional and unreasonable" probation terms.

In a motion to vacate pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel, "[t]he challenger's burden is

to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). When considering a claim of deficient performance, courts must evaluate the conduct from counsel's perspective at the time. *See Strickland*, 466 U.S. at 690. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 105 (quoting *Strickland*, 466 U.S. at 190). In other words, "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694.

"Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment

significance.'" *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)

(quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

## 1. Recidivism

Petitioner argues that counsel was ineffective because counsel failed to have him undergo a psychosexual evaluation prior to his sentencing hearing and failed to mitigate the government's argument that Petitioner was a significant risk for recidivism.[2] (ECF No. 43, at 8).

Evaluating counsel's decision at the time it was made, "[t]he court doubts that the decision not to submit a medical evaluation 'amount[s] to incompetence under "prevailing professional norms."'" *Brown v. United States*, No. CCB-09-1677, 2012 WL 1969677, at *2 (D.Md. May 31, 2012) (citations omitted). "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the 'constitutionally protected independence of

---

[2] Petitioner argues that "Defense counsel knew, via the Government's sentencing memo[randum]" that the government would argue at sentencing that Petitioner had a high likelihood of recidivism. (ECF No. 43, at 9). The government argued that Petitioner was a significant risk for recidivism in its sealed sentencing memorandum filed eleven days before the sentencing hearing.

counsel' at the heart of *Strickland*." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (quoting *Strickland*, 466 U.S. at 689).

As the Government points out, at sentencing it did not focus on Petitioner's potential recidivism, but rather on the nature and circumstances of Petitioner's offense. (*See* ECF No. 33, at 6-13). The government emphasized Petitioner's abuse of trust of the victim and victim's father as well as the breadth of Petitioner's child pornography collection and distribution. In response, defense counsel reasonably focused on Petitioner's remorse and willingness to change, indirectly addressing recidivism. At sentencing, counsel highlighted that while incarcerated Petitioner completed a program on getting motivated to change and served as a teaching assistant in an adult basic education class. (*Id.* at 16, 18). Counsel read Petitioner's letter to the court which reflected Petitioner's remorse and desire to seek counseling and change his ways. (*Id.* at 18-19). Counsel further argued that Petitioner "desperately wants" and "desperately needs treatment[,]" and specifically requested that the court impose treatment as a condition of his sentence and recommended one of two sex offender treatment programs available at a specific prison. (*Id.* at 20). In addition, counsel argued that Petitioner's criminal history under the Guidelines was overstated and that Petitioner's criminal history category should be I rather than II. (*Id.* at 15). Therefore, counsel

presented mitigating evidence at sentencing and performed adequately.

Moreover, no prejudice resulted because Petitioner has not shown that the psychosexual evaluation would have changed his sentence.[3] As the court emphasized at Petitioner's sentencing hearing, Petitioner's conduct alone as to Count 1 "is deserving of an extremely harsh punishment[,]" as it is "unthinkable that someone in a parental role could do what [Petitioner did] to a child." (ECF No. 33, at 25). As to Count 5, the court pointed out that the Guidelines were calculated on 600 or more images and that Petitioner had 14,000 images, the distribution of which was "ongoing and escalating." (*Id.* at 26). Thus, the Guidelines "capture only a part of the reprehensible conduct" that Petitioner engaged in. (*Id.*).

Petitioner points out that the psychosexual evaluation concludes that Petitioner "is at a moderate risk for reoffending upon his release into the community[.]" (ECF No. 43-1, at 3). However, Petitioner's emphasis on the distinction between moderate and significant risk for reoffending is of no moment.[4]

---

[3] This court may consider evidence about the actual process of decision to the extent such evidence is part of the sentencing record. *See Strickland*, 466 U.S. at 695.

[4] As the Government points out, Petitioner's score of 4 points on the Static-99 actually equates to a "moderate-high" risk for recidivism. *See Static-99 – Tally Sheet*, http://www.static99.org/pdfdocs/static-99-coding-rules_e71.pdf.

Defense counsel performed adequately at sentencing and counsel's failure to have a psychosexual evaluation prepared did not result in any prejudice to Petitioner.[5]   Therefore, his ineffective assistance claim fails on this basis.

### 2. Supervised Release Conditions

Petitioner also argues that counsel was ineffective for failing to object to the language and constitutionality of several supervised release conditions that were imposed at sentencing. (ECF No. 43, at 13, 19).

Petitioner was, of course, facing a lengthy sentence of imprisonment.   Counsel necessarily focused on minimizing the term of incarceration.   Supervised release would not begin for many years and conditions of supervision may always be modified during supervision. *United States v. Johnson*, 529 U.S. 53, 60 (2000); 18 U.S.C. § 3583(e)(2).   Thus, counsel's decision not to challenge the proposed conditions must be viewed through that lens.   Moreover, none of the now challenged conditions were inappropriate under the circumstances.

---

[5] Petitioner argues that under American Bar Association standards, counsel's performance was deficient and objectively unreasonable. (ECF No. 43, at 8-9).   However, "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.   Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, *but they are only guides*." *Strickland*, 466 U.S. at 688 (emphasis added).

District courts have "broad latitude" to impose appropriate conditions of supervised release. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009). However, any condition must satisfy two fundamental prerequisites. First, the condition must be "'reasonably related' to the factors referred to in 18 U.S.C. § 3583(d)(1), which include 'the nature and circumstances of the offense and the history and characteristics of the defendant,' *id.* § 3553(a)(1); 'protect[ing] the public from further crimes,' *id.* § 3553(a)(2)(C); and 'provid[ing] the defendant with needed . . . medical care[] or other correctional treatment,' *id.* § 3553(a)(2)(D)." *Armel*, 585 F.3d at 186 (alterations in original). Second, the condition must "'involve[] no greater deprivation of liberty than is reasonably necessary' to achieve the goals enumerated in § 3553(a)." *Id.* (quoting 18 U.S.C. § 3583(d)(2)) (alteration in original). Additionally, the sentencing court must provide "the rationale for the special conditions it imposes." *Id.; see, e.g., United States v. Shannon*, 743 F.3d 496, 502 (7th Cir. 2014) ("Adequate findings are especially important when the subject matter of the ban is a lifetime ban on otherwise-legal material."); *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999) ("[C]ourts of appeals have consistently required district courts to set forth factual findings to justify special . . . conditions.").

*United States v. Maxson*, 281 F.Supp.3d 594, 596 (D.Md. 2017).

### a. Restricted Contact with Minors

Petitioner first challenges the supervised release condition that, unless approved by a probation officer, he will "have no contact with people under the age of 18" and "will not congregate or loiter near any school, park, playground, arcade,

or other places frequented by children under the age of 18[.]"
(ECF No. 33, at 27). Petitioner argues that prohibiting him
from having contact with anyone under the age of eighteen is a
greater deprivation of liberty than necessary under § 3583(d)(2)
because "the sexual contact involved in this case involved a
child much more younger than 18" and "[r]estrictions against
interacting with teenagers who are just shy of adult age has no
relationship to [his] case." (ECF No. 43, at 15). Petitioner
further argues that this restriction "could include a server in
a restaurant, a clerk at a store, a minor on a bus, or numerous
other examples." (*Id.*). Lastly, on this point, Petitioner
argues that nothing in the record suggests that his conduct has
anything to do with his activities in public places.

Contrary to Petitioner's contention, the condition does not
prohibit him from having contact with anyone under the age of
eighteen without prior approval. After imposing the condition,
the court explicitly stated, "This provision does not apply to
people under the age of 18 with whom you must deal in order to
obtain ordinary and usual commercial services[,]" and provided a
clear example – "That is, if they're working at a place you are
frequenting." (ECF No. 33, at 28). Thus, this condition does
not "swe[ep] so broadly that it would effectively prevent him
from going to the grocery store unaccompanied." (ECF No. 43, at
15). Petitioner could do just that.

The government cites to several cases where other courts have upheld conditions of supervised release that restrict a defendant's contact with minors and prohibit the defendant from congregating or loitering at locations frequented by minors when the offense shows that the defendant poses a risk to children. *See United States v. Shultz*, 733 F.3d 616, 619-20 (6th Cir. 2013); *United States v. Ellis*, 720 F.3d 220, 225-226 (5th Cir. 2013); *United States v. Smith*, 606 F.3d 1270, 1282-83 (10th Cir. 2010); *United States v. Moran*, 573 F.3d 1132, 1140 (11th Cir. 2009); *United States v. Stoterau*, 524 F.3d 988, 1008 (9th Cir. 2008); *United States v. Johnson*, 446 F.3d 272, 280-81 (2[d] Cir. 2006); *United States v. Ristine*, 335 F.3d 692, 696-97 (8th Cir. 2003). In the Fourth Circuit, a particular restriction does not require an "offense-specific nexus." *United States v. Worley*, 685 F.3d 404, 407 (4th Cir. 2012) (quoting *United States v. Perazza-Mercado*, 553 F.3d 65, 70 (1st Cir. 2009)). The court may impose any condition that is "reasonably related" to the relevant statutory sentencing factors. *Id.*

Petitioner's offense shows that he is a risk to minor children and the condition is not overly broad or vague. Petitioner sexually abused a minor child, recorded it, and had over 14,000 images of child pornography on his computer. The condition imposed serves the statutory sentencing purposes of public protection and rehabilitation under 18 U.S.C. §§

13

3553(a)(2)(C) and (D) and does not impose a deprivation greater than necessary in the case of Petitioner.

**b. Restrictions on Viewing Sexually Explicit Material**

Petitioner also challenges the constitutionality of the condition that he "not own, use, possess, view, or ready any material, including pictures, photographs, books, writings, drawings, videos or video games depicting and/or describing sexually explicit conduct or frequent any place that is involved with pornography as defined in [18 U.S.C. § 2256(2)]" (ECF No. 33, at 28). Petitioner argues that this condition is exceedingly broad and is a greater deprivation of liberty than necessary under § 3583(d). (ECF No. 43, at 17).

Petitioner cites to cases where probation conditions prohibiting the possession of any "pornography" were struck down on appeal because the conditions were unconstitutionally vague. (*Id.* at 16) (citing *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002); *United States v. Loy*, 237 F.3d 251, 254 (3[d] Cir. 2001)).

In *Guagliardo*, the condition that the petitioner not possess "any pornography" was deemed unconstitutionally vague because it did not inform the petitioner of what is encompassed by "pornography" and thus what conduct could result in his being returned to prison. In *Loy*, the defendant challenged his probation condition that prohibited him from possession "all

14

forms of pornography, including legal adult pornography." The court held that the prohibition on pornography was "unconstitutionally vague because it fail[ed] to provide any method for Loy or his probation officer to distinguish between those items that are merely titillating and those items that are 'pornographic'"; nor did the prohibition "provide any guidance as to whether the restriction extend[ed] only to visual materials, or whether purely textual works and sound recording f[e]ll within its scope." *Id*. at 254. In *Loy*, the court grappled with dictionary definitions of "pornography" and found that the various definitions "clearly lack[ed]" precision. *Id*. at 263-64.

Here, the court specified that the restriction includes "any material" that "depict[s] and/or describe[s] sexually explicit conduct or frequent any place that is involved with pornography as defined in 18 [U.S.C. § 2256(2)]." (ECF No. 33, at 28). The condition is not merely a blanket prohibition on "pornography." 18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated (i) sexual intercourse . . .; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person[.]" Although Petitioner argues that this condition would prohibit him from reading classic novels and visiting Barnes & Nobles bookstores, the restriction on

15

sexually explicit materials and sexually oriented establishments should be read in a "commonsense way" and does not include such material and establishments. *See Ellis*, 720 F.3d at 226-27 (citations omitted).

Petitioner also does not cite to any binding authority that would suggest that the condition is a greater deprivation of liberty than necessary in his case. This circuit has upheld terms of supervised release that restrict possessing or viewing any sexually explicit material even when the defendant's offense involves a minor only. *United States v. Lord*, 393 F.App'x 60, 63 (4th Cir. 2010) ("[T]he condition is reasonable, given Lord's background and the need for the district court to protect the public."); *United States v. Henson*, 22 F.App'x 107, 112 (4th Cir. 2001) ("In light of defendant's conviction for receiving more than 100 images of child pornography and his prior conviction for taking indecent liberties with a minor, the special condition of supervised release restricting his possession of any sexually explicit material was not overly broad and was sufficiently related to the goals of rehabilitating defendant and protecting the public[.]"). The government cites to numerous cases where courts have upheld conditions of supervised release that prohibit a defendant from possessing sexually explicit materials or from frequenting places where sexually explicit materials are available. *See United States v.*

*Carpenter*, 803 F.3d 1224, 1240 (11th Cir. 2015); *Ellis*, 720 F.3d
at 226-27; *United States v. Zobel*, 696 F.3d 558, 576-77 (6th Cir.
2012); *United States v. Thompson*, 653 F.3d 688, 694-96 (8th Cir.
2011); *United States v. Thielemann*, 575 F.3d 265, 273 (3[d] Cir.
2009); *United States v. Daniels*, 541 F.3d 915, 927-28 (9th Cir.
2008).

As the government points out, Petitioner's own submitted
psychosexual evaluation provides that Petitioner's "prolific use
of pornography . . . featured both child and adult subjects
engaged in a range of sexual activity and behaviors" and that
"even with healthy outlets for his sexual urges, [Petitioner]
remained strongly compelled to view pornography and engage in
masturbatory activity." (ECF No. 43-1, at 3). During this
evaluation, Petitioner "admitted to an interest in pornography
that dated back to young adolescence and that grew to include
images of child pornography when he himself was still a child."
(*Id.*). Petitioner has not shown that the condition was a
greater deprivation of liberty than necessary. The condition is
reasonably related to the sentencing purposes of public
protection and Petitioner's rehabilitation.

### c.  Computer and Internet Restrictions

Lastly, Petitioner challenges the constitutionality of the
condition that he "not use any computer system, internet-capable
device and/or similar electronic device at any location . . .

without the prior approval of the probation office."[6] (ECF No. 33, at 28-29). Petitioner argues that restricting his internet access will deprive him of "today's preeminent means of communication" and that internet use "had little to do" with his offense, rendering "the wholesale ban on Internet access a greater deprivation of liberty than necessary to promote adequate deterrence." (ECF No. 43, at 18). Petitioner cites to no binding authority to support his position, and the court does not agree that Petitioner's collection and distribution of child pornography using an internet-based file sharing program has "little to do" with his offense. Petitioner distributed child pornography to countless individuals using file sharing programs, including undercover officers. At the time of his arrest, Petitioner had at least 14,000 images and videos of child pornography on his computers and other digital media. Petitioner's submitted psychosexual evaluation provides that Petitioner "manifests many aspects of an addictive behavior in regards to his use of the Internet. His excessive use of the Internet, his repeated attempts to quit, his compulsion to return to it, and his attempts to hide the behavior are all

---

[6] Petitioner incorrectly recites this condition as one prohibiting his computer use unless approved by a probation officer for legitimate work. (ECF No. 43, at 18). After imposing the condition the court provided an example of when a probation officer might provide prior approval – "[t]hat is, they can approve if it becomes necessary for you to have access for legitimate work." (ECF No. 33, at 29).

consistent with a model of addictive behaviors." (ECF No. 43-1, at 3). Notwithstanding Petitioner's conduct in his offense, Petitioner may seek prior approval by a probation officer to use the internet, and thus the condition is not a "wholesale ban" on his internet use. "[R]estrictions on internet and computer use are often imposed in cases involving child pornography," *Ellis*, 720 F.3d at 225, and "[a] condition limiting the use of a computer or an interactive computer service [is recommended] in cases in which the defendant used such items[,]" U.S.S.G. § 5D1.3(d)(7)(B). This condition is reasonably related to the sentencing factors and is not a greater deprivation of liberty than necessary.[7]

Petitioner has not shown that the terms of supervised release are unconstitutional, and thus that Counsel's performance was deficient in failing to object to them. Counsel performed adequately and, after invitation by the court, raised reasonable objections to the conditions regarding contact with minors (that Petitioner should not be prohibited from having contact with his minor son) and computer use (that a complete

---

[7] Petitioner also argues that "any computer system" could reasonably be read to include an ATM, a self-checkout machine at a grocery store, or a navigation system. (ECF No. 43, at 19). However, the "categorical term 'computers' is subject to a 'commonsense understanding of what activities the category[y] encompass[es]" and would not include such systems. *Ellis*, 720 F.3d at 225 (citing *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001)).

restriction is unreasonable but monitoring is appropriate). (*See* ECF No. 33, at 21-23).

Additionally, Petitioner was not prejudiced by counsel's alleged errors. Petitioner is currently serving a 30-year sentence of imprisonment at the conclusion of which his supervised release will commence. After his release from imprisonment, Petitioner will complete a sex offender risk assessment and psychosexual evaluation where the court can better assess at that time which conditions should remain or should be modified. Petitioner has suffered no prejudice by the alleged errors in counsel's performance, and thus his ineffective assistance of counsel claim fails.

## IV. Conclusion

For the foregoing reasons, the motion to vacate sentence filed by Petitioner Eugene Lewandowski will be denied. The government's motion to seal will be denied in part.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Upon its review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it declines to issue a certificate of appealability. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
